PER CURIAM.
The state appeals a trial court’s validation of up to $300,000,000 in housing revenue bonds. We have jurisdiction pursuant to article Y, section 3(b)(2), Florida Constitution, and affirm the trial court’s order validating these proposed bonds.
In June 1987 the Florida Housing Finance Agency adopted a resolution asking the Division of Bond Finance (DBF) to issue not more than $300,000,000 of housing revenue bonds. The governor and cabinet, sitting as DBF’s governing board, adopted a resolution authorizing the bonds early in 1988. Attorneys for DBF then filed a complaint for validation. After a hearing, the circuit court validated the proposed bond issue, prompting this appeal.
Before the housing finance agency loans bond money for construction of housing, it must determine that a “significant number of low-income, moderate-income, or middle-income persons” in the locality “are subject to hardship in finding adequate, safe, and sanitary housing.” § 420.508(3)(b)l, Fla. Stat. (1987). According to the trial court’s findings of fact, projects financed by tax-exempt bonds will meet federal requirements as to the number of units set aside for low-income tenants, and for projects financed by taxable bonds at least twenty per cent of the tenants must meet low-income requirements. On appeal the state argues that twenty percent is not a significant number of tenants and that, therefore, the proposed bond issue does not satisfy the legislative intent set out in subsection 420.508(3)(b)l.
In 1987 the legislature made numerous changes in the statutes governing the housing finance agency in order to bring Florida into compliance with federal requirements. The amendments included the addition of subsection 420.509(14), which provides that twenty percent of a project’s tenants must be classified as low income if the project is financed by taxable revenue bonds. The trial court found specifically that the amendments serve a public purpose. Moreover, promoting affordable public housing is a valid public purpose. State v. Division of Bond Finance, 495 So.2d 183 (Fla.1986), and cases cited therein.
The state’s argument is, in reality, an objection to the political and policy considerations basic to the legislation authorizing housing revenue bonds. These areas lie beyond the “legitimate judicial province to intrude or to substitute our judgment for what has been decided in the legislative and executive spheres of authority.” Platts v. Division of Bond Finance, 275 So.2d 231, 232 (Fla.1973). Judicial scrutiny of bond validations is limited to determining if a public agency has the authority to issue the subject bonds and if the purpose of the bonds is legal and to ensuring that the bond issue complies with all legal requirements. Warner Cable Communica *291 tions v. City of Niceville, 520 So.2d 245 (Fla.1988); State v. City of Miami, 103 So.2d 185 (Fla.1958). The trial court found that the instant proposed bond issue met these requirements. The state’s first argument does not convince us otherwise.
The state’s second argument questions whether these bonds can be used to finance projects which are restricted to certain groups based on income, age, and family size. In other words, the state raises the specter of discrimination against persons who do not fit within the specified groups. The legislature, however, has legitimately targeted certain groups as deserving of special consideration because members of those groups might be discriminated against. Whether anyone outside those groups might be discriminated against in projects financed by these bonds is collateral to, and beyond the scope of, these validation proceedings. Warner Cable; City of Miami.
We therefore affirm the trial court’s order validating this revenue housing bond issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, shaw, barkett, GRIMES and KOGAN, JJ., concur.